E-FILED
Friday, 14 June, 2013 03:14:00 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| CMB EXPORT, LLC, CMB Summit, LLC d/b/a CMB REGIONAL CENTERS, | ) ) ) |
| Plaintiffs, | ) Case No. |
| v. | ) ) ) |
| KIMBERLY ATTEBERRY, CHRISTOPHER ATTEBERRY, and VERMILLION CONSULTING, LLC, | ) ) ) ) |
| Defendants. | ) |

## COMPLAINT AT LAW

Plaintiff, CMB EXPORT, LLC, CMB Summit, LLC, d/b/a CMB REGIONAL CENTERS ("CMB" or the "Company"), by and through its attorneys, LEWIS BRISBOIS BISGAARD & SMITH LLP, for its Complaint against Defendants, KIMBERLY ATTEBERRY, CHRISTOPHER ATTEBERRY, and VERMILLION CONSULTING, LLC (collectively, "Defendants"), states as follows:

## THE PARTIES AND JURISDICTION

1. CMB Export, LLC is a California limited liability company and CMB Summit, LLC is an Ohio limited liability company, each with its principal place of business located at 7819 42nd Street West, Rock Island, IL, 61201. CMB is engaged in providing a variety of resources facilitating the federal EB-5 Visa Program by which foreign citizens invest in development projects in the United States as a way of securing permanent residency status in this country. CMB's business is literally worldwide, with clientele from countries in Europe, Asia, and Latin America.

2. Defendant Kimberly Atteberry ("Kim Atteberry") is an individual residing at 1620 21st St., Rock Island, IL 61201, and a former vice-president for CMB.

3. Defendant Christopher Atteberry ("Chris Atteberry") is an individual residing at 1620 21st St., Rock Island, IL 61201. He is Kim Atteberry's husband and a former hourly employee for Rock Island Auction, Inc. ("Rock Island Auction"), an independent company owned and operated by the managing member of CMB. Rock Island Auction shares facilities with CMB.

4. Vermillion Consulting, LLC ("Vermillion") is a limited liability corporation with its principal place of business located at, on information and belief, 5356 Ashleigh Road, Fairfax, Virginia 22030. Vermillion lists itself as providing EB-5 Visa services and identifies Kim and Chris Atteberry as its officers.

5. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331, as CMB alleges a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*, a federal statute. This Court has supplemental jurisdiction over CMB's remaining claims, arising out of the same set of facts, pursuant to 28 U.S.C. § 1367.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a) because the action arises out of conduct that took place in part or in total in the State of Illinois and, specifically, at CMB offices in Rock Island, Illinois and at the Atteberry residence in Rock Island, Illinois.

## FACTUAL ALLEGATIONS

### CMB's Business

7. The EB-5 Visa Program allows foreign investors to permanently live and work in the United States by providing permanent visas or so-called "Green Cards" for immigration purposes via investments in U.S. businesses that create full time employment for U.S. workers.

8. CMB operates under an applied for and approved "Regional Center" designation within the EB-5 Visa Program. Regional Center activities allow foreign investors to qualify for permanent residency by making investments as a limited partner in a partnership formed by the Regional Center. The partnership then invests into qualified enterprises that create at least ten U.S. jobs per investor as a result of the investments

9. CMB operates U.S. Government-authorized Regional Centers under this program and manages foreign investor money by vetting and structuring investments within various projects suitable for investment under the EB-5 Visa Program that will create the requisite number of jobs. CMB has been working in this area for approximately sixteen years.

10. In the course of its business, CMB collects and maintains highly confidential personal information on potential investors, including highly sensitive financial data, highly confidential and privileged attorney-client information, highly confidential and proprietary investment project information, in addition to developing and maintaining its own proprietary business models for client contact, outreach, project evaluation, and project development.

**Defendants Kim and Chris Atteberry's work for CMB**

11. Kim Atteberry began working for CMB on July 18, 2011. She originally worked for the Company as a independent contractor, providing economic impact evaluation services and relevant economic program guidance for various CMB investment projects.

12. On or about November 14, 2012, CMB offered, and Kim Atteberry accepted, a full time vice-president position. As a vice-president, Kim Atteberry was responsible not only for economic valuations and assessments of various projects, but was also the project development team leader responsible for gathering the relevant documentation of new business

projects for CMB. In this capacity, Kim Atteberry had relationships with CMB's outside business and immigration professionals as well as U.S. Government contacts.

13. Also as a vice-president, Kim Atteberry had access to virtually all of CMB's proprietary information on projects, potential investors, and current and potential investment projects, all of which were protected by non-disclosure agreements. She also had access to CMB's sales and development plans, marketing plans, legal documents, and financial performance evaluations.

14. Kim Atteberry, as the project development team leader, had involvement with "near term" (estimated to be less than six months development time) business projects worth a minimum of $3.2 billion. At the time of her resignation, these same projects were worth $260 million in income to CMB.

15. When Kim Atteberry began working for CMB, she asked CMB management to create a position for her husband, Chris, who planned to accompany her from Washington, D.C. CMB owner Pat Hogan ("Hogan") offered Chris Atteberry a job paying $50,000 annually until he could obtain employment elsewhere. The position was solely within Hogan's auction business, Rock Island Auction, a high-end, antique firearm and other weapons auction house. Chris Atteberry began working for Rock Island Auction on August 27, 2012. His assigned duties were exclusive to the Rock Island Auction Company.

16. At no time was Chris Atteberry authorized to view or possess any CMB materials, including any proprietary information or any other documents in possession of or developed by the Company. In addition, as a Rock Island Auction employee, Chris Atteberry was restricted from accessing CMB information through the CMB security measures described below.

**Kim Atteberry's Resignation from CMB**

17.     On February 26, 2013, Kim Atteberry resigned from CMB, effective immediately. She resigned by sending an email message to Hogan.

18.     Almost immediately after receiving her resignation notice, Hogan notified CMB's Senior Vice President, Kraig Schwigen ("Schwigen").  Schwigen immediately met with Kim Atteberry and requested she return all CMB information and documents in her possession.  She responded that she had no CMB materials or information and that she had deleted or destroyed everything in her possession.

19.  Within days, however, CMB discovered that, prior to her resignation, Kim Atteberry and her husband Chris Atteberry had removed significant amounts of CMB's confidential proprietary and privileged information.  Specifically, while still employed by CMB, Kim Atteberry removed vast amounts of CMB proprietary information, such as investor files, business plans, regional center applications, CMB annual reports to the USCIS, highly confidential individual client documents (including personal financial information, family data, and immigration data), loan agreements, project pro-forma's, loan pro-forma's, intercreditor agreements, partnership documents, requests for qualifications by potential projects, as well as highly sensitive project information from private developers, state and federal entities, and general CMB investment information.

20.     Also, prior to Kim Atteberry's resignation, Chris Atteberry, acting on Kim's instructions, improperly directed an information technology employee to allow him access to the CMB company computer servers. Using his wife's improper authorization, Chris Atteberry

removed protected and proprietary information from CMB files, including a document titled "ANGL Loan Agreement," which detailed a current CMB investment project and $33 million loan, for use in competing with CMB.

21. CMB also discovered that while she was employed, Kim Atteberry contacted potential CMB-originated investment targets in Tennessee and California with the intent of taking their business with her when she left CMB. Kim Atteberry also worked on CMB investment projects and contacted investment project leaders, including the Business Development Director for the City of Fresno, without advising or consulting CMB senior management that she was doing so, keeping the projects' status secret until she could remove them from CMB for her own benefit. In addition, she falsely advised at least one CMB client, involved in the so-called "Buckingham transaction", which is a $46 million loan, that CMB was no longer interested in pursuing its project with the intent to direct the project to her own consulting company, Defendant Vermillion.

22. As a result of Defendants' improper acquisition and misappropriation of CMB's confidential and proprietary information, as well as their breach of its non-disclosure agreements with clients and potential clients, the Company contacted local law enforcement, which executed a search warrant on the Atteberrys' home on March 4, 2013. Law enforcement authorities found and seized volumes of CMB's proprietary and confidential information, in addition to personal computers of Kim and Chris and other personal electronic data storage devices containing digital copies of CMB's proprietary and confidential information.

## CMB's Confidential and Proprietary Information

23. Over the course of its business life, CMB developed or acquired large amounts of proprietary information, including, but not limited to business methodologies, project and

investor evaluation methods, computer software, business ideas, billing procedures, pricing data, client personal and financial data, potential and ongoing investment project details, project financing, customer servicing methods, customer databases, legal source material and other data related to its EB-5 business. CMB's product services and business operations incorporate and are based on its confidential financial information.

24. CMB has expended a significant amount of time, effort and resources to protect its confidential and proprietary information. By way of example, CMB stores its electronic data and confidential information behind password firewalls, restricts access to both its hard copy and electronic client information, and advises its employees and managers of the highly sensitive and confidential nature of the information that it maintains.

25. CMB's confidential and proprietary information is not available to the general public or to CMB competitors through legitimate means. CMB does not provide its confidential or proprietary database information to potential investors or potential project managers without requiring that the interested parties sign a non-disclosure agreement and/or without removing confidential information from the released material.

26. Equally as sensitive as its own information, CMB retains and protects confidential and proprietary business information on behalf of various state, federal and private business entities seeking EB-5 investment from CMB clients. The nature of these projects, their scope, and their business plans are highly sensitive, and CMB is required to sign nondisclosure agreements ("NDAs") with these entities as a precondition for even initial discussions about potential business.  Violation of the terms of these NDAs can subject CMB to significant financial penalties, as well as the loss of millions of dollars in investment opportunities for CMB and its clients.

27. Because the stolen CMB confidential information maintained by CMB is essential to the operation of CMB's business, Defendants will be able to instantly establish a competing business enterprise with CMB and approach CMB's existing customers, potential customers, and potential project managers for work.

28. In fact, Kim Atteberry has already used CMB trade secret information to engage in significant contact with CMB clients, potential clients, and investment projects throughout the scope of CMB's operations

29. In addition, by virtue of her role in CMB, Kim Atteberry has extensive knowledge of CMB's business, including knowledge of confidential personnel information, CMB products, services, project certification, and client validation procedures. Through her participation in CMB's usual business, she took part in marketing, selling, and serving CMB investors, project managers, and perspective customers, all using CMB's financial, managerial, and information resources, including CMB's confidential information.

30. Based on information received from CMB customers, Kim Atteberry held herself out as competing against CMB for EB-5 business while she was still employed with the company. She also diverted business opportunities, including the City of Fresno project, the Waveland Financial Nashville, Tennessee project, and the American Life Tennessee project, away from CMB by misrepresenting CMB's interest in the projects to potential investors.

31. Moreover, while still employed by CMB, Kim Atteberry, aided and abetted by Chris Atteberry, and for the purpose of further damaging CMB's business, solicited CMB employees, including, on information and belief, Aaron Cook, to abandon their positions in order to join her in her new competing business enterprise.

32. CMB wrote to both Kim and Chris Atteberry, demanding they return all information they improperly removed from the Company. They have also been advised to cease and desist current contact with CMB clients and EB-5 project managers. On information and belief, Defendants continue to operate in competition with CMB, using stolen CMB proprietary and confidential information.

## COUNT I
## VIOLATION OF THE ILLINOIS TRADE SECRET ACT
**(Against All Defendants)**

33. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1-32 of the Complaint.

34. Defendants intentionally solicited CMB customers, interfered with CMB contracts, and improperly acquired, without authorization, CMB's confidential information and trade secrets in violation of 765 Ill. Comp. Stat. 1065/1, *et seq.*

35. Specifically, Defendants knowingly used and misappropriated CMB's customer lists, proposals, legal documents, templates, and other confidential documents, for the purpose of setting up and operating a new business and to compete unfairly with CMB in violation of the Company's non-disclosure agreements.

36. CMB takes affirmative efforts to maintain the secrecy of the information and documents that Defendants improperly acquired and misappropriated through password protection, limited distribution, non-disclosure agreements, and notification to employees that the information is confidential and not to be disseminated outside the Company without proper authorization.

37. CMB derives economic value, or the potential for economic value, from the use of the information that Defendants improperly acquired and knowingly misappropriated.

38. As a result of Defendants' actions in improperly taking and using CMB trade secrets and proprietary information, CMB has suffered lost business and faces irreparable harm in the form of lost customers and lost position in the marketplace.

**COUNT II**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030, *et seq.***
**(Against All Defendants)**

39. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1-38 of the Complaint.

40. CMB provided Kim Atteberry access to password protected computers for the sole purpose of transacting business with CMB's customers and in furtherance of CMB's business.

41. Kim Atteberry and Chris Atteberry, intentionally and without authorization, or in excess of their authorization, removed massive amounts of CMB's confidential financial and business records through the use of CMB's protected computers in violation of the Computer Fraud and Abuse Act, Act 18 U.S.C. § 1030, *et seq*.

42. Chris Atteberry intentionally removed additional CMB records through the use of CMB's protected computers in violation of the Computer Fraud and Abuse Act, Act 18 U.S.C. § 1030, *et seq*.

43. Defendants improperly obtained confidential financial and trade secret information through CMB's protected computers for the express purpose of setting up a competing business with CMB.

44. As a result of Defendant's actions, CMB suffered losses in excess of $5,000, including substantial costs in an effort to re-secure its computer systems and data information storage capabilities from further intrusion by Defendants.

## COUNT III
## BREACH OF FIDUCIARY DUTY
**(Against Kim Atteberry)**

45. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1-44 of the Complaint.

46. Kim Atteberry was a key management employee and corporate officer of CMB and/or its subsidiaries who owed a heightened fiduciary duty of loyalty to CMB, her employer, not to actively exploit her position positions for her own personal benefit or hinder the ability of CMB to continue the business for which it was developed.

47. Kim Atteberry actively promoted the interests of a competing business and diverted and solicited CMB's customers to that competing business while still employed by CMB, in breach of her fiduciary duty of loyalty to CMB.

48. Kim Atteberry's breach of her fiduciary duty directly and proximately caused CMB to suffer damages, including lost business, and lost value for the compensation it paid Kim Atteberry when she was acting on her own behalf to the detriment of CMB..

## COUNT IV
## CIVIL CONSPIRACY
**(Against All Defendants)**

49. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1-48 of the Complaint.

50. Defendants entered into a voluntary agreement for the purpose of misappropriating confidential trade secret and proprietary information from CMB in knowing violation of their statutory and common law duties.

51. Prior to her resignation, Kim Atteberry, in furtherance of Defendants' agreement, removed massive amounts of CMB's confidential financial and business records, some in hard copy and some in electronic form, in violation of her statutory and common law duties.

52. Chris Atteberry, also in furtherance of Defendants' agreement, removed additional CMB records, in violation of his statutory and common law duties.

53. Vermillion, through the actions of its officers, and in furtherance of the Defendants' agreement, aided in the removal of massive amounts of CMB confidential and proprietary information by serving as a repository for the information and providing a vehicle for the use of the improper information in competing business activities with CMB.

54. Defendants improperly obtained confidential and financial information for the express purpose of setting up a competing business with CMB and for the outright sale of CMB proprietary information for personal gain in violation of their fiduciary duties, federal and state law, and the Company's non-disclosure agreements.

## COUNT V
## TORTIOUS INTERFERENCE
## WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Against All Defendants)

55. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1-54 of the Complaint.

56. Prior to her departure from CMB, Kim Atteberry contacted CMB clients and actively misled them with respect to CMB's ongoing business deals as part of Defendants intentional scheme to use CMB's proprietary and trade secret information to set up a competing business operation.

57. CMB reasonably expected to enter into and continue a business relationship with those clients that Kim Atteberry contacted and misled.

58. Kim Atteberry purposefully interfered with CMB's current and expected economic advantage with respect to the following projects and customers: Waveland Financial,

Treat Partners, Griffin Capital Corporation, Jonathan Bloch, WhichEB5, City of Fresno, Jones Lang LaSalle, and others yet to be discovered.

59. As a result of Defendants' intentional interference, CMB suffered damages, including lost business, and loss of business reputation.

WHEREFORE, Plaintiff, CMB EXPORT, LLC and CMB Summit, LLC d/b/a CMB REGIONAL CENTERS, respectfully request that this Honorable Court enter an Order against Defendants as follows:

a. A permanent injunction prohibiting Defendants from contacting and soliciting business from CMB's potential and expected customers and current employees;

b. A permanent injunction prohibiting Defendants from using, disclosing or misappropriating CMB's trade secrets and confidential information;

c. Monetary damages to compensate CMB for the harm it suffered as a direct and proximate result of Defendants' violations of state and federal law; and

d. An order requiring Defendants to return all confidential and proprietary information that is the property of CMB, its clients, or its potential or actual business partners.

Respectfully submitted,

CMB EXPORT, LLC and CMB Summit, LLC
d/b/a CMB REGIONAL CENTERS

/s/ John J. Michels, Jr.

By:   One of Its Attorneys

John J. Michels, Jr. (ARDC No. 6278877)
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois 60661
Phone: (312) 345-1718
Fax: (312) 345-1717

## CERTIFICATE OF SERVICE

    I, John J. Michels, Jr., certify that the foregoing document has been served electronically through the CM/ECF System of the United States District Court of the Central District of Illinois on June 14, 2013.

/s/ John J. Michels, Jr.
John J. Michels, Jr.
