UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| CMB EXPORT, LLC, CMB SUMMIT, LLC, d/b/a CMB REGIONAL CENTERS, ) ) ) Plaintiffs, ) ) v. ) ) KIMBERLY ATTEBERRY, ) CHRISTOPHER ATTEBERRY, and ) VERMILLION CONSULTING, LLC, ) ) Defendants. ) ) | Case No. 4:13-cv-04051-SLD-JEH |

## ORDER

Before the Court are Plaintiffs' objection to the Magistrate Judge's order of October 20, 2015, or seeking clarification of same, ECF No. 84; Defendants' motion to strike the putative reply to the response to this motion, ECF No. 94; another motion strike that reply filed by interested party CanAm Enterprises, LLC ("CanAm"), alternatively styled a motion for leave to file a "short surreply," ECF No. 96; and Plaintiff's motion seeking to present additional authority pertaining to its appeal, ECF No. 98. For the following reasons, the objection is DENIED, the motions to strike MOOT, and the motion to present additional authority GRANTED.

## BACKGROUND[1]

The United States operates a visa system, the EB-5 Program, that allows wealthy foreign nationals to live and work in the country indefinitely if they invest in American businesses in such a way as to create full time employment for American workers. Plaintiffs CMB Export,

---

[1] The facts recounted here are taken from Plaintiffs' "Complaint at Law," ECF No. 1, unless otherwise noted.

1

LLC and CMB Summit, LLC (collectively "CMB") help foreign investors channel their money into the country in such a way as to qualify for the visas. CMB has been designated a "Regional Center" by the EB-5 Program. ("Regional centers" free foreign investors somewhat from the requirements of job creation by allowing investors to create both "direct" and "indirect" jobs, terms of art whose precise meanings are not relevant here. *See* U.S. Citizenship and Immigration Services: EB-5 Immigrant Investor Pilot Program, https://www.uscis.gov/sites/default/files/USCIS/Resources/Resources%20for%20Congress/Congressional%20Reports/EB-5%20Investor%20Pilot%20Program.pdf (visited Sept. 22, 2016).) CMB and other regional centers channel foreign investments by creating partnerships in which the foreign investor client becomes a limited partner. The partnership then invests money in such a way as to satisfy the visa requirements for the client. CMB uses its expertise and knowledge of domestic investment opportunities on behalf of its clients. In the course of this work, CMB gathers information about potential investors and investments, at least some of it confidential, and also claims that it creates "proprietary business models for client contact, outreach, project evaluation, and project development." Compl. ¶ 10.

Defendant Kimberly Atteberry used to be the Chief Economist for United States Citizenship and Immigration Services, which administers the EB-5 visa program and regulates participants. Mot. Protective Order 3, ECF No. 71. However, she went to work for CMB. She started on July 8, 2011, and was promoted to vice-president on November 12, 2012. Her responsibilities included evaluating projects for investment, and liaising with representatives of these businesses, with immigration professionals, and with government officials. She had access to "virtually all" of the information CMB now asserts to be proprietary, including information about potential investors and investments, all of which was assertedly "protected by non-

disclosure agreements." Compl. ¶ 13.  She also had access to CMB's sales and development plans, marketing plans, "legal documents," and "financial performance evaluations." *Id.*  CMB's owner also, apparently as a favor to Atteberry, gave her husband, Defendant Christopher Atteberry, a job at his high-end antique firearm auction house.

On February 26, 2013, Kimberly Atteberry resigned.  CMB claims that it quickly found the Atteberrys had taken "vast amounts" of proprietary information when she left, including information from all the categories mentioned above.  Compl. ¶ 19.  CMB also alleges that Christopher Atteberry took digital files from CMB's servers, some of which detailed a current CMB investment project and loan.  CMB also claims that it found out that even while Kimberly Atteberry had been a vice president, she had tried to arrange with some of CMB's "investment targets" to do business separately once she left and started her own business.  To this end, CMB claims, she lied to both sides, concealing her contacts from CMB and telling some of the contacts that CMB was no longer interested in projects that, in fact, she wanted later to invest in with the company she would go on to create, Defendant Vermillion Consulting, LLC ("Vermillion").

CMB contacted local law enforcement, which searched the Atteberrys' house on March 4, 2013, and seized evidence that CMB believes contains copies of their proprietary information.  Unfortunately for CMB, the seized material is currently in the custody of the U.S. Attorney, and apparently completely unavailable to CMB in trying to prove its case.  Mem. Supp. Objection  9.

CMB filed suit on June 14, 2013, under federal-question jurisdiction, alleging (I) violations of the Illinois Trade Secret Act ("ITSA"), 765 ILCS 1065/1–9, Compl. ¶¶ 33–38; (II) violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(g), Compl. ¶¶ 39–44; (III) a state law claim for breach of fiduciary duty as to Kimberly Atteberry only, *id.*

at ¶¶ 45–48; (IV) a state law civil conspiracy claim, *id.* at ¶¶ 49–54; and (V) a state law tortious interference claim, *id.* at ¶¶ 55–59.  Discovery has proceeded actively for years.

The current motions have arisen because CMB seeks discovery of documents in Defendants' possession that were generated in the course of business dealings between Defendant Vermillion, which now works as a facilitator of EB-5 visa applications, and third party corporations Civitas, CanAm, and EB5 Capital.  These third parties, who have appeared through counsel in the instant litigation, assert that these materials are privileged by nondisclosure agreements ("NDA") between themselves and Defendants, and not relevant in any event to CMB's claims.

On May 20, 2015, CMB filed a motion to compel production of discovery relating to several requests it had made and Defendants had refused, including requests concerning entities for which Kimberly Atteberry had worked after leaving CMB.  ECF No. 56.  CMB represented in this motion that Defendants had asserted the existence of NDAs governing the information, and had claimed that it was not likely to lead to the discovery of admissible evidence.  Mot. Compel 2, ECF No. 56.  CMB claimed that it had offered to enter into a protective agreement to safeguard against disclosure to the public of any material governed by an NDA, but that Defendants refused.  *Id.* at 2–3.  CMB argued then, as it has continued to do, that it needed access to communications between Defendants and entities they had worked for after Atteberry left CMB because those communications might contain CMB's proprietary information, or contain references to Atteberry's alleged earlier malfeasance as an employee of CMB, both of which would be relevant to its claims for relief.  *Id.* at 3.  Defendants responded that CMB had no reason it could point to to think that these communications contained proprietary information, and that insofar as the communications would tend to show that Atteberry had "poached" CMB's

4

clients, she had not signed a non-compete contract, and such actions on her part would have no relevance to CMB's claims.  Resp. Mot. Compel 3, ECF No. 60.

The Magistrate Judge held a hearing on July 27, 2015, in which he granted CMB's motion to compel as to most of its numbered discovery requests (a few were withdrawn).  Jul. 27, 2015 Minute Entry, ECF No. 63.  The Magistrate Judge ordered the parties to submit a draft joint protection order to the Court.  *Id*.

On August 24, 2015, however, Defendants filed a motion for reconsideration, ECF No. 66, asserting a "recent revelation that multiple third parties have a significant interest in protecting the production of certain materials that have been compelled."  Mot. Reconsideration 3.  Shortly afterward several companies describing themselves as competitors of CMB (presumably, they are facilitators of EB-5 visa applications and investment schemes) sought leave to appear in order to assert their confidentiality interests in the materials CMB sought discovery of.  Civitas Capital Group ("Civitas"), and Encore Enterprises Inc. and Encore Global Investment Management, LLC ("Encore") filed a motion for leave to file an amicus brief, ECF No. 67, which the Court granted, Aug. 25, 2015 Text Order; and EB5 Capital ("EB5") moved for a protective order, ECF No. 71. These motions revealed that CMB had already served subpoenas directly on Encore, EB5, and CanAm.  Mot. Leave 3, ECF No. 67; EB5 Mot. Protective Order 3, ECF No. 71. Encore had successfully contested the subpoenas in federal district court in Texas; EB5 had agreed to produce materials pursuant to the Court's earlier protective order, ECF No. 50.

In their amicus brief, Civitas and Encore argued CMB was seeking access to their confidential information in way that was "misusing the discovery process to obtain competitive trade secret information about its competitors" which "would be highly valuable . . . and would

5

create an unfair marketplace." Amicus Brief 1, 3, ECF No. 68.  The documents would disclose their "reasoning and methodology utilized . . . in analyzing, processing, financial modeling and submitting EB-5 project applications, term sheets, plans, and studies . . . [and] customers, business partners and potential business partners." *Id*. at 11.  Encore and Civitas sought either that CMB's discovery requests be denied, or that a special master be appointed to review the material CMB asserted to be discoverable before it was produced.  Amicus Brief 18.  EB5 asked that the already-entered protective order be extended to cover any documents it might be forced to produce.  EB5 Mot. Protective Order 10.

The Magistrate Judge held another hearing on September 8, 2015, at which representatives of CMB, Defendants, Encore, and Civitas were present.  Sept. 8, 2015 Minute Entry.  He directed the parties to confer amongst themselves regarding the documents of which production was sought, and directed counsel for CMB to provide the third parties a list of materials of which CMB sought production.  He deferred ruling on the motion for reconsideration.  Thereafter, an amended protective order entered, ECF No. 76.  The final party to show up, CanAm, then filed a motion seeking to prevent discovery of its proprietary information in Defendants' possession because of its previous disclosure, pursuant to subpoena, of "hundreds of pages of documents showing business relationships, contracts, and projects" related to Defendants and relevant to the lawsuit.  CanAm Mot. Protective Order 1–6, ECF No. 80.

On October 20, 2015, the Magistrate Judge held a hearing with representatives of all the principles and third parties present.  At the hearing, counsel for CMB indicated that while the parties had negotiated in good faith, per the Court's September 8 directions, they had been unable to narrow the scope of discovery.  Oct 15, 2015 Tr. ("Tr.") 5–6, ECF No. 87.  The parties

repeated their arguments from briefing, and the Magistrate Judge probed whether the broad requests were justified. For instance, the Magistrate Judge asked whether CMB had any evidence that Atteberry had provided any inappropriate information to Encore, and counsel for CMB indicated that he did not "have a specific document or interaction [he could] point to other than the fact that [Kimberly Atteberry] began working [at Encore] two months after she left CMB . . . ." Tr. 15. He indicated that CMB had evidence showing that Atteberry had had email contact with officials at Civitas about projects "she was engaged on when she was at CMB." *Id.* at 20. CanAm indicated that, while CMB and CanAm had negotiated the production of some 70 pages of relevant material pursuant to an earlier subpoena, CanAm objected to CMB's continuing and broad requests for information in Defendants' possession. *Id.* at 35–36. CanAm also described the limited nature of Atteberry's work. "[She applied] job creation analyses . . . to particular facts of the projects that are specific to CanAm. So, what we have here is a lot of just highly confidential information about the nature of a potential project, about the particular parties that are involved in the project, the size of the project (inaudible) going from CanAm to Ms. Atteberry and then . . . the economic analysis and [her opinion] about whether . . . the project is a suitable candidate for EB5." Tr. 33.

    In response to the parties' argument, the Magistrate Judge noted that he had previously granted CMB's broad discovery request because CMB could not access the materials the government had seized, and thus was not in a position to make particularized requests for information. Tr. 40. He observed, however, that he made that ruling before the third parties had appeared in order to assert their interests in these discovery materials, and he stated that their newly-asserted interests "change[d] the analysis that [he] made originally as it relates to scope, breadth, relevance, [and] burden as to this discovery." *Id.* at 41. He noted that CMB had not

demonstrated Atteberry engaged in a "pattern" of release and misuse of its proprietary information sufficient to justify broad discovery of any and all material that might relate to her later employment with CMB's competitors. *Id.* at 44. And he observed that the discovery burden, as well as the risk of disclosure of confidential information, being placed on non-parties to the lawsuit by the original grant of CMB's discovery requests on July 27, 2015, was far greater than had been apparent before those parties had appeared. *Id.* at 48–49. He then granted Defendants' motion for reconsideration, ECF No. 66,

> to this extent . . . That, as it relates to these third parties, discovery that the plaintiff seeks from the defendant . . . they must make a specific showing through motion with the courts—*specific*—as to how the discovery sought relates to their claim in this case as to a stolen trade secret.
> So, I need specifics. You have got to . . . link it up to some evidence that you have that is going to give the Court a basis to believe that the information you seek is more than a fishing expedition because right now what this looks like is a long-line fishing expedition of grand order.

*Id.* at 50 (emphasis added).

The appeal from this order, currently before the Court, followed on November 3, 2015.

## DISCUSSION

Although it withdraws its discovery requests as to materials relating to Encore, Mem. Supp. Objection 1 n.1, ECF No. 85, CMB seeks to be allowed to pursue all the discovery requests the Magistrate Judge had approved at the July 27, 2015 hearing, which included all communications between Defendants and Civitas, CanAm, and EB5 that might be in Defendant's possession, *id.* at 12. CMB argues that, because it has shown some evidence that Atteberry used CMB's information in communications with third parties, it has made a showing sufficient that Defendants should be required to turn over for discovery all their documentary evidence of business dealings with CMB's competitors made after Kimberly Atteberry left CMB. *Id.* at 4–5. CMB again argues that the parties' agreed protective order is more than

8

sufficient to allay any fears the third parties may have about confidentiality, *id.* at 7–11, and argues that the Court should find baseless the third parties' fears that CMB's in-house counsel would convey their competitive information to CMB, were she to find any in her review of discovery Defendants produced, *id.* at 4–5.

Defendants, CanAm, EB5, and Civitas argue CMB has failed to establish the Magistrate Judge's decision was clearly erroneous or contrary to law or that the procedure set forth at the hearing for seeking future discovery was unattainable. Def. Res. to Obj. 6–7, ECF No. 89; CanAm Opp. to Obj. 9–13, ECF No. 88; EB5 Opp. to Obj. 10–13, ECF No. 90; Civitas Opp. to Obj. 6–8.

I. **Legal Framework On an Appeal From a Magistrate's Order**

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. . . . The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law.

Fed. R. Civ. P. 72(a). "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).

II. **Analysis**

CMB complains that it has "nowhere else to go to discover Atteberry's and Vermillion's documents," Mem. Supp. Objection 5, implying that if it is barred access to the material it seeks to discover, it is effectively barred from the evidence it needs to support its claims against Defendants. But this is inaccurate. The Magistrate Judge's grant of the motion to reconsider

9

was extremely limited, and does not prevent CMB from obtaining any discoverable material under Rule 26(b)(1); it does not even put limits on the breadth of requests CMB can make to Defendants about proprietary information they took with them from CMB and continue to possess.  Rather, the Magistrate Judge's order merely puts in place a restriction on the scope of requests CMB can make about a narrow category of information:  communications Defendants have had with third parties in which CMB's proprietary information has been discussed.  To obtain discovery under the Magistrate Judge's order, CMB need only approach him with specific evidence of how the discovery it seeks production of relates to one of its claims. *See* Tr. 49–50.  To object to this order, as CMB has done, is to ask this Court to find that the Magistrate Judge must order discovery of all material Defendants may have regarding their business interactions with the third parties, without any further showing of relevance to CMB's claims.  The only reasoning CMB offers in favor of this extremely broad discovery, which the Magistrate Judge considered and rejected, is that on two occasions, EB5 and CanAm have shown knowledge of information that CMB regards as its proprietary information.  Mem. Supp. Objection 4.

      To the extent that these incidents help show how the discovery CMB seeks relates to its claims, it may use that information to request the Magistrate Judge to order the discovery, as he invited CMB to do and made explicit that CMB was not foreclosed from doing.  However, to the extent that these incidents are asserted to show a pattern of Kimberly Atteberry's use of CMB's trade secrets or confidential information, they do not justify the discovery of *all* material relating to *any* business dealings Defendants have subsequently had with CMB's competitors.  (Or anyway, the Magistrate Judge was not clearly erroneous in so ruling.)

      Federal Rule of Civil Procedure Rule 26(b)(1) permits discovery of information relevant to any party's claim or defense, but the potential relevance of discovery requests must be

10

considered in light of the other factors identified by the rule: it must be "proportional to the needs of the case, considering . . . the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, after initially granting CMB's broad discovery requests, the Magistrate Judge modified his order in light of the third parties' arguments, finding that CMB had made a weak showing as to Atteberry's alleged "pattern" of disclosures," Tr. 44, and that the burden placed on the non-parties to the lawsuit by unchecked, weakly-substantiated discovery of their business communications with Defendants was more substantial than had initially been evident, *id.* at 48–49. These factual findings are not clearly erroneous; indeed, they are eminently justified by the evidence and argument before the Magistrate Judge. The Court will not disturb them.

CMB relies on *Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664 (7th Cir. 2009), for the proposition that contractual agreements with third parties to litigation do not bar discovery, because the litigants themselves are not bound by the agreements. *See Gotham*, 580 F.3d at 665 ("Contracts bind only the parties. No one can 'agree' with someone else that a stranger's resort to discovery under the Federal Rules of Civil Procedure will be cut off."). But *Gotham* concerned an explicit discovery request for documents exchanged in arbitration, which one side refused to turn over to the other in discovery. *Id.* The Seventh Circuit observed that "[n]o one contend[ed] that the subpoena exceed[ed] the bounds set by Fed. R. Civ. P. 26(b)(1)." *Id.* Here, by contrast, the very reasons for the Magistrate Judge's order were the factors of relevance and burden identified by the Rule. And, rather than barring discovery of a particular set of documents, the Magistrate Judge merely required a certain amount of specificity in requests for discovery, which he would then evaluate on their merits. *Gotham* is distinguishable.

11

## CONCLUSION

Accordingly, Plaintiff CMB's objection, ECF No. 84, is DENIED, and the Magistrate Judge's order of October 20, 2015 AFFIRMED.  The motions to strike, ECF Nos. 94, 96, are MOOT.  Plaintiff's motion seeking to present additional authority ECF No. 98, is GRANTED.

Entered this 29th day of September, 2016.

                                            s/ Sara Darrow
                                            SARA DARROW
                                  UNITED STATES DISTRICT JUDGE